# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

SANDRA MAXINE LAYNE,

       Defendant-Appellant.

UNPUBLISHED
October 14, 2014

No.  316059
Oakland Circuit Court
LC No.  2012-241986-FC

Before:  CAVANAGH, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right her jury convictions of second-degree murder, MCL 750.317, and felony-firearm, MCL 750.227b, for which she was sentenced to 20 to 40 years' imprisonment and two years' imprisonment, respectively.  We affirm.

Defendant shot her grandson, Jonathon Hoffman, to death.  Jonathon lived with defendant and her husband.  In March 2012, Jonathan was charged with marijuana possession and sentenced to probation that included drug testing.  In April 2012, defendant purchased a handgun, a speed loader, and a box of ammunition.  She took two lessons related to gun use, which included firing the gun at a gun range.  Her husband did not know about the gun purchase or the lessons.  On the morning of May 18, 2012, defendant took Jonathon to his scheduled drug test.  Because he tested positive for "spice," also known as "K2," he had to return later in the day and he was angry.  He and defendant argued.  Defendant took Jonathon to his afternoon drug test and, after his return to the vehicle, they argued.  When defendant and Jonathon arrived home at some time after 4:30 p.m., defendant asked her husband to take the dog for a walk.  While defendant's husband was out walking the dog, at some time before 5:27 p.m., the shooting occurred.  Defendant fired numerous gunshots, in several areas of the house.  Jonathon was shot six times and died.  Toxicology tests revealed no drugs in his blood, but a synthetic drug metabolite in his urine, i.e., K2.  The medical examiner testified that drugs found in urine have exited a person's system and do not affect the person.  Defendant was arrested and taken to a hospital.  No injuries were identified.  At trial, defendant asserted that she shot Jonathon in self-defense.

On appeal, defendant argues that she should have been permitted testify about statements Jonathon made during both car rides home following the drug testing because they showed Jonathon's state of mind and why she felt she had to defend herself against him.  We disagree.

-1-

Hearsay is only admissible if an exception applies. Defendant argues that the exception set forth at MRE 803(3) applied to the excluded testimony. MRE 803(3) provides that the following is not excluded by the hearsay rule:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Defendant argues that she "sought to introduce statements made to defendant by Hoffman on the day of the incident that would have suggested that he, not defendant, was the aggressor." That is, defense counsel asked defendant what Jonathon was saying on the way home from his first drug test and a hearsay objection was improperly sustained because the testimony would have showed Jonathan's state of mind. And after defendant testified that Jonathon was talking in a "very bizarre[,] agitated way," on the way home from the second drug test, defense counsel asked what he was saying and another hearsay objection was improperly sustained. Defendant argues that her testimony regarding Jonathon's statements during their arguments after each drug test were vital to her claim of self defense because they would have suggested that Jonathon was the aggressor.

But defendant did not make an offer of proof after the trial court sustained the prosecutor's objections. When proffered evidence is excluded, the party must make an offer of proof to preserve the issue of admissibility for appeal unless the substance of the evidence was apparent from the context within which questions were asked. MRE 103(a)(2); *People v Snyder*, 462 Mich 38, 42; 609 NW2d 831 (2000). Here, we cannot determine the substance of the testimony regarding Jonathon's statements from the context of the questions asked. Because this issue was not preserved, our review is for plain error affecting defendant's substantial rights. See MCR 103(d); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

And plain error affecting defendant's substantial rights is not established. We agree with defendant that Jonathon's state of mind was relevant because defendant claimed to shoot him in self-defense. Statements indicative of the declarant's state of mind are admissible when the declarant's state of mind is in issue. *People v White*, 401 Mich 482, 502-503; 257 NW2d 912 (1977), superseded by statute on other grounds as recognized by *People v Koonce*, 466 Mich 515, 520; 648 NW2d 153 (2002). And lawful self-defense will excuse a defendant from homicide. *People v Riddle*, 467 Mich 116, 126, 142; 649 NW2d 30 (2002). To establish this defense, the evidence must show that: (1) defendant honestly believed that she was in danger, (2) the danger feared was death or serious bodily harm, (3) the action taken appeared at the time to be immediately necessary, and (4) defendant was not the initial aggressor. *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013), quoting MCL 780.972.

On the record before us, defendant fails to establish that, even if the evidence was improperly excluded, the error affected the outcome of the trial. That is, contrary to her claim, any statements Jonathon purportedly made in the car on the way home from the drug testing appointments would not likely have led the jury to believe that Jonathon was the initial aggressor before defendant shot him multiple times. Defendant testified that after they returned home from

the second drug testing, she and defendant were arguing upstairs in his bedroom. Jonathon wanted to leave Michigan because of his positive drug test and purportedly said: "I am getting out of here and I'm taking your car." Defendant also testified that he said he knew where she kept money in the house. After Jonathon made these statements, defendant testified, she went downstairs to her bedroom and retrieved her loaded handgun because: "I wanted him to hear me. I wanted him to pay attention to me. That I would not give him a car. I would not let him take the car. I would not let him take the money. He had to listen." She then climbed the 13 stair steps back up to Jonathon's bedroom with the loaded gun in her hand and found Jonathon in the bathroom. She walked toward him in the bathroom; the gun was not concealed. They were very close to each other. Jonathon kicked her and she began shooting. On this record, any statements Jonathon made in the car after the drug testing, both early in the day and in the afternoon, would not tend to establish defendant's claim of lawful self-defense. Accordingly, this claim is without merit.

Next, defendant argues that her constitutional right to present a defense was violated because of the trial court's exclusion of (1) the statements Jonathon allegedly made to her in the car after the drug testing, and (2) statements Jonathon allegedly made to his probation officer over two weeks before his death, which questioned her authority and showed disrespect for authority figures. Defendant argues that these statements would have supported her claims that she "reasonably believed she was in danger of being killed or seriously injured" and "had every reason to be afraid of him." After de novo review of this question of law, we disagree. See *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

Clearly a criminal defendant must be afforded a meaningful opportunity to present evidence in her own defense. *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). But that right is not unlimited. This Court has explained:

> The right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. Michigan, like other states, has a legitimate interest in promulgating and implementing its own rules concerning the conduct of trials. And our Supreme Court has broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Thus, an "accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve. [*King*, 297 Mich App at 473-474 (quotation marks and citations omitted).]

Here, defendant fails to demonstrate, or even argue, that MRE 803(3) and MRE 402 "are arbitrary or disproportionate to the purposes they are designed to serve." See *id*. at 474. Thus, this argument is without merit. See *id*. Further, in light of the record evidence, any statements Jonathon made in the car after the drug testing or to his probation officer over two weeks before he was shot would not tend to support defendant's claim of lawful self-defense.

Finally, defendant argues that her 20 to 40 year sentence for her second-degree murder conviction constitutes cruel and unusual punishment, although it was within the applicable

guidelines range. After review of this unpreserved claim for plain error, we disagree. See *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013).

A sentence within the applicable guidelines range is presumptively proportionate, and a proportionate sentence does not constitute cruel or unusual punishment. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). To overcome the presumption, "a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Bowling*, 299 Mich App at 558 (quotation marks and citation omitted). Defendant argues that because the guidelines range was 144-240 months and she was sentenced to a minimum of 240 months, the trial court clearly did not take into consideration her lack of criminal history, age, and health issues. These considerations, however, do not present "unusual circumstances that would render the presumptively proportionate sentence disproportionate." See *id*. Defendant's lack of criminal history is considered in the guidelines scoring. And her age and non-life-threatening health conditions are unremarkable factors. Accordingly, we reject defendant's claim that her sentence constituted cruel and unusual punishment.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause