# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL WILLARD WELLS,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No.  321805
Saginaw Circuit Court
LC No.  13-038170-FH

Before:  BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of conspiracy to commit arson, MCL 750.72, arson of a dwelling house, MCL 750.72, arson of an insured property, MCL 750.76, and larceny by false pretenses, MCL 750.218(6)(a).  The trial court sentenced defendant to serve concurrent prison terms of 7 to 20 years for the arson and conspiracy convictions and 7 to 15 years for the larceny conviction.  For the reasons provided below, we affirm defendant's convictions, but we remand for further proceedings related to defendant's sentence.

The main evidence against defendant was introduced through defendant's son, Dennis Wells, who testified that he intentionally burned defendant's home at defendant's request on August 6, 2011, in exchange for a truck.  Along with this damaging testimony, the trial court also admitted evidence pursuant to MRE 404(b) of previous fires at buildings or of property owned by defendant.

## I.  PRIOR ACTS

Defendant argues that the trial court erred in admitting evidence of four previous fires on his properties that occurred between 2002 and 2008.  The admissibility of bad acts evidence will be reversed on appeal only when there has been a clear abuse of discretion.  *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595(2005).  A trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes.  *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

As a cornerstone of evidentiary law, relevant evidence is admissible and irrelevant evidence is not admissible.  MRE 402.  However, MRE 404(b)(1) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identify, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In other words, "[w]here the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit crime, the evidence must be excluded." *People v Knox*, 469 Mich 502, 510; 674 NW2d 366 (2004). Thus, for evidence that potentially implicates MRE 404(b) to be admissible, the evidence must be offered for a proper purpose, *id.* at 509, and a proper purpose is one other than establishing a defendant's character to show his propensity to commit the charged offense, *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005).

Defendant contends that evidence of the past fires was admitted solely to demonstrate his character or propensity to set fires. We disagree. The purpose of the evidence was to demonstrate a lack of accident with respect to the fire at issue by showing the history of fires of defendant's property, which is a proper purpose. See MRE 404(b)(1) (listing "absence of mistake or accident" as a proper purpose to admit prior-act evidence). Our Supreme Court has explained that in arson cases, evidence of past fires is admissible because the "series of similar incidents—fires involving homes and vehicles owned or controlled by defendant—" objectively suggests a lack of accident. *People v Mardlin*, 487 Mich 609, 619; 790 NW2d 607 (2010). Michigan has long recognized this concept, which is known as the doctrine of chances and provides that "rare or unusual events that occur frequently in relation to a single person are less likely to have an innocent explanation and more likely to demonstrate the probability of an *actus reus*." *People v Breidenbach*, 489 Mich 1, 12; 798 NW2d 738 (2011). In fact, the doctrine of chances is often relied on in arson cases to demonstrate that a fire was not accidental. See *Mardlin*, 487 Mich at 618-619 (stating that "the doctrine is epitomized in arson cases in which apparently accidental fires befall property linked to the defendant with uncommon frequency").

Defendant avers that *Mardlin* was inapplicable because he did not present a defense that the fire was accidental. Instead, his defense was that he never instructed his son to set the fire. However, regardless of defendant's defense, the prosecutor had to prove beyond a reasonable doubt that defendant was actively involved in intentionally setting the fire. MCL 750.72(1) (arson statute providing that a person who willfully or maliciously burns is guilty); *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004) (stating that to be convicted on an aiding and abetting theory, the prosecution must prove, among other things, that the defendant *intended* the commission of the crime). As a result, *Mardlin* and the doctrine of chances are applicable.

Defendant also says that evidence of the past fires was not relevant because none of the past fires involved a claim that defendant requested someone to set a fire for him. This argument misses the mark and seems to be based on defendant's view that the evidence was offered to show that defendant acted in conformity with the prior incidents. In other words, defendant seems to suggest that because, in his view, the evidence was offered to show that he had a propensity for setting fires, it was not relevant or admissible because the circumstance here

allegedly involved him directing someone else to set the fires, which was a circumstance that was not present in the prior episodes. However, as explained above, the evidence was merely offered to show that defendant had the requisite intent, which was a necessary element for the prosecutor to prove. Furthermore, when past acts are used to prove present intent, "the past events need *only* be of the same general category as the charged offense." *Mardlin*, 487 Mich at 622-623.

Though relevant, MRE 404(b) evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403; *Knox*, 469 Mich at 509. Only *unfairly* prejudicial evidence is covered by this aspect of MRE 403. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). "'Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury.'" *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001), quoting *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). Here, defendant suggests that evidence of the past fires was prejudicial because it could only be used to infer his propensity to burn his property. However, as already discussed, the evidence had significant value regarding defendant's intent to have his home burned. While this may have been prejudicial to defendant with respect to establishing his intent, such prejudice would not have been unfair or improper. Accordingly, the trial court did not clearly abuse its discretion in allowing evidence of defendant's past fires.

Similarly, defendant maintains that the jury was improperly instructed regarding the evidence of his past fires. The trial court instructed the jury as follows:

> The prosecution has introduced evidence of other fires at the defendant's properties in 2002, 2003, and 2008. I will now explain how you are to consider evidence of those fires. As the number of incidents of an out of the ordinary event increases in relation to a particular defendant, the probability increases that the charged act or the prior occurrences were not the result of natural causes.
>
> If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may indicate his criminal intent or the absence of accident because it is improbable that such events occur so often in relation to the same person due to mere happenstance.

A criminal defendant has the right to have a properly-instructed jury consider the evidence against him. *Mills*, 450 Mich at 80. The trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner. *Id.*

Defendant argues that this instruction unfairly presented the case to the jury because he never offered an accident defense and because the instruction included the words "criminal intent." However, as discussed above, defendant's defense at trial is not controlling, and the instruction fairly conveys the doctrine of chances and is proper. Furthermore, we discern no error in the trial court's use of the phrase "criminal intent." Whether the court stated "criminal intent" or "intent to commit arson" is of no consequence. What is important is that the court was explaining to the jury that the fires could only be considered for that specific purpose, which was

proper. See MRE 105[1]; *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). As a result, the trial court's instructions were consistent with the applicable law, and defendant's claim of instructional error fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also contends that his trial counsel provided ineffective assistance because he failed to call witnesses requested by defendant, failed to adequately cross-examine Dennis and his wife, Laci Wells, and gave erroneous advice about being out on bond prior to sentencing, which caused defendant economic loss. Because no evidentiary hearing was held, our review is limited to mistakes apparent from the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

In order to establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defense. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014). For the second part of this test, counsel's performance will be deemed to have prejudiced defendant if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. The effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

## A. FAILURE TO CALL WITNESSES

Here, defendant argues that the performance of his trial counsel was deficient because counsel failed to call several witnesses identified in his affidavit who allegedly could have commented on the credibility of Dennis. However, because our review is limited to the lower court record, defendant's affidavit on appeal is not to be considered. See *Riley*, 468 Mich at 139. There is nothing in the record to indicate what these witnesses would have stated if called to testify at trial.[2] Accordingly, defendant has failed to establish the necessary factual predicate to support his claim of ineffective assistance of counsel. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Furthermore, decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy that this Court will not second-guess with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308

---

[1] "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." MRE 105.

[2] We note that even if we were to consider defendant's affidavit, it also fails to provide the substance of what these witnesses would have stated at trial.

(2004). Therefore, defendant has not overcome the presumption that it was sound trial strategy to not call these witnesses.

## B. FAILURE TO FULLY CROSS-EXAMINE/IMPEACH

Defendant also says that counsel's performance was deficient because he did not adequately cross-examine Dennis and his wife, Laci. We first will address counsel's performance with respect to Laci.

Defendant notes three instances where the testimony of Laci differed between the preliminary examination and trial. Defendant claims that at the preliminary examination, Laci testified that she learned of the arson plan only after the fire was set, but she testified at trial that she learned of the plan on the way to defendant's house. However, a careful review of the testimony shows that there was no discrepancy. At the preliminary examination, Laci explained that, while Dennis only told her the existence of a "plan" after the fire was set, she knew of the plan on the way to defendant's house because she overheard Dennis and defendant's conversation. Thus, any discrepancy is illusory and would have had no effect on any attempt to impeach.

Further, defendant claims that Laci testified differently regarding the impact her illness has on her memory. At the preliminary examination, Laci stated, "With my illness I have a lot of memory issues." And at trial, she stated that her illness affected "[s]ome of my like way back memory—I mean, there's some little things, but I—I can remember most things." But any difference between the two testimonies is inconsequential; the testimony at trial simply elaborated on her prior testimony without contradicting it. Accordingly, it was not unreasonable for defense counsel to not attempt to impeach on this basis.

And defendant avers that Laci never stated at the preliminary examination that defendant made any death threats to her, while at trial she stated that defendant did make such threats. The claim is unsupported by the record. At the preliminary examination, Laci testified that defendant began making threats "a couple months" after the fire happened. Thus, defendant's claim is not supported by the record.

Therefore, because Laci's preliminary examination testimony was not inconsistent with her testimony at trial, defense counsel was not ineffective by failing to impeach on the basis of the alleged inconsistencies.

We next address the three alleged discrepancies in Dennis's testimony. Regarding the first discrepancy, when Dennis was asked at the preliminary examination if defendant mentioned why he wanted the fire set, Dennis responded, "No." Dennis later repeated that he was not sure why defendant wanted the fire set when the trial court asked him the same question. But at trial, when Dennis was asked if defendant provided a reason for wanting the fire set, he responded, "Financial situation," and believed it was related to "the mortgage."

As to the second discrepancy, defendant notes that Dennis testified at the preliminary examination that, while he spoke with defendant the morning of the fire, he did not recall the substance of that conversation. But at trial, Dennis testified that on the morning of the fire,

defendant called him to let him know that because defendant would be in Jackson, it would be a "good day" to go ahead with the fire.

The third discrepancy relates to how Dennis set the fire. At the preliminary examination, he testified that he set fire to a single t-shirt and placed it on a countertop, which had some other items on it. When asked specifically if those other items were clothes, he stated that he could not recall, but at trial, Dennis testified that he placed the lit t-shirt on a pile of clothes.

While the failure to cross-examine Dennis on these matters presents a much closer question, we find that defendant has failed to overcome the strong presumption that counsel's performance was constitutionally adequate. Counsel's failure to properly impeach a witness may constitute ineffective assistance of counsel. See *People v Trakhtenberg*, 493 Mich 38, 57-58; 826 NW2d 136 (2012). However, counsel need not impeach a witness "on all contradictory aspects of his preliminary examination and trial testimony." *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987).

Here, counsel impeached Dennis's trial testimony through other avenues. In questioning Dennis, defense counsel initially focused on the fact that Dennis admitted to paying money for the truck he received from defendant. The fact that Dennis paid money for the truck acts to cast doubt on his contention that the plan all along was for him to receive the truck in exchange for setting the fire. Defense counsel also attempted to show that Dennis testified the way he did for personal reasons. Counsel had Dennis elaborate on his direct examination testimony that defendant abused and victimized Dennis when Dennis was a child. This evidence could suggest why Dennis might harbor resentment and thus be biased against his father and would provide a motive for Dennis to fabricate his testimony. Additionally, counsel stressed the extremely favorable plea bargain Dennis received as a result of testifying against defendant. Dennis admitted that he would face no more than 12 months in a county jail and, as far as the incarceration was concerned, it potentially could be served on an electronic tether, "like house arrest." As a result, while impeaching Dennis on the various discrepancies may have been helpful, the failure to do so did not mean that counsel's performance fell below an objective level of reasonableness. See *People v Pickens*, 446 Mich 298, 359; 521 NW2d 797 (1994) (stating that effective assistance is the test, not "perfect representation"). We conclude that counsel's decision to focus on other ways to impeach Dennis's testimony falls under the ambit of presumptively sound trial strategy, and defendant has not established that the strategy was constitutionally deficient. See *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012); *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

## C. ADVICE ON BOND

Defendant also argues that the performance of his trial counsel was deficient because he suffered financial loss based on advice from counsel that he would be continued on bond prior to his sentencing hearing. However, there are no facts on the record to review regarding this issue and, regardless, such advice would not have pertained to the events of the trial.

## III. SENTENCING

Defendant also argues that the trial court erred in scoring offense variable (OV) 9 at 25 points. Because defendant never raised this argument at sentencing, we review the issue for plain error affecting defendant's substantial rights. See *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

MCL 777.39(1)(b) provides that 25 points is appropriately scored for OV 9 when "[t]here were 10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss." The statute further instructs the sentencing court to "count each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a).

Defendant argues that only defendant and an insurance company suffered property loss and that there was no testimony that any person was in danger of death. However, there was testimony that more than 12 firefighters from four fire departments took 45 minutes to extinguish the significant fire at defendant's home. Defendant claims that no firefighters were injured and there was no testimony that they were in danger. However, it is established that first responders, like the firefighters here, can be considered to be victims who were placed in danger for the purposes of the statute. *People v Fawaz*, 299 Mich App 55, 63; 829 NW2d 259 (2012). Under the statute, such a victim need not actually be injured—being placed in danger of physical injury is sufficient. See *id.* Thus, with 12 firefighters battling the fire in the present case, even if none was injured, defendant has failed to establish any plain error.

Defendant further asserts that the trial court violated his Sixth Amendment rights under the United States Constitution when it based defendant's minimum sentence on facts not proven to the jury beyond a reasonable doubt. However, defendant did not raise this issue at the trial court. Therefore, this unpreserved issue also is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

Our Supreme Court's recent decision in *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, decided July 29, 2015), is dispositive on this issue. In *Lockridge*, the Supreme Court held that when a judge makes findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding that increases a defendant's minimum sentence, this runs afoul of a defendant's right to a jury trial. *Id.* at ___ (slip op at 1). As a result, in order to avoid any Sixth Amendment violations, the Court further held that Michigan's sentencing guidelines scheme is to be deemed advisory, not mandatory. *Id.* at ___ (slip op at 28). But sentencing judges must nonetheless consult the guidelines and "'take them into account when sentencing.'" *Id.* at___ (slip op at 28), quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

Here, the court scored OV 9 at 25 points, OV 14 at 10 points, and OV 19 at 15 points for a total OV score of 60, which placed defendant in OV level V in the sentencing grid. See MCL 777.63.

As already discussed, OV 9 was scored at 25 points based on the number of "victims," which here was deemed to be the first responder firefighters that were called to defendant's burning house. OV 14 was scored at 10 points based on defendant's status as the "leader in a multiple offender situation." MCL 777.44(1)(a). And OV 19 was scored at 15 points based on

the fact that defendant "used force or the threat of force against another person . . . to interfere with, attempt to interfere with, or that results in the interference with the administration of justice . . . ." MCL 777.49(b).

It is clear that the facts supporting the scoring of OV 9 and OV 19 were not "admitted by the defendant or necessarily found by the jury verdict." *Lockridge*, ___ Mich at ___ (slip op at 11). In regard to OV 9, the jury's verdict did not address, directly or indirectly, the number of firefighters who responded to the scene, and defendant never admitted to how many firefighters participated in fighting the fire at his home. And likewise for OV 19, even though there was testimony supporting the scoring of 15 points, defendant did not admit that he threatened any witnesses, and the jury's verdict does not require finding that defendant threatened any witnesses. Therefore, because the facts supporting the scoring of OV 9 and OV 19 were not admitted by defendant or found by the jury and because the facts found by the jury verdict were insufficient to assess the minimum number of OV points necessary for defendant's OV level of V,[3] defendant has established a "threshold showing of the potential for plain error." *Id.* at __ (slip op at 32-33).

The remedy, as outlined by our Supreme Court, is to remand for the trial court to conduct a *Crosby*[4] hearing, where the trial court is first to determine whether defendant wishes to be resentenced, with the understanding that the sentencing guidelines now are advisory. *Id.* at ___ (slip op at 35). If the answer is "yes," then the court shall determine whether it would have imposed a materially different sentence but for the unconstitutional constraint. *Id.* at ___ (slip op at 35). But in doing so, "the court should only consider the circumstances existing at the time of the original sentence." *Id.* at ___ (slip op at 35-36).

---

[3] A minimum of 50 points is required for defendant's Level V. See MCL 777.62. Thus, by not considering the impact of OV 9 and OV 19, only 10 points remain in defendant's total OV score from OV 14. In other words, the jury verdict only supports a total OV level of II.

With respect to OV 14, we acknowledge that it is a much closer call whether the jury verdict supported that scoring. With the sole evidence of defendant's participation being him instructing his son to set the fire, the jury's guilty verdict necessarily means that the jury found that defendant did indeed instruct Dennis to set the fire, which arguably would make him a "leader in a multiple offender situation." We note that even if the jury's verdict did not support the scoring under this OV, remand is necessary regardless based on the judicial fact-finding that occurred with OV 9 and OV 19.

[4] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

We affirm defendant's convictions but remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra